## GREEN *v.* FRENCH.

*(Circuit Court, D. New Jersey.* March 28, 1882.)

**1. PATENTS FOR INVENTIONS—ISSUES PRESENTED—PRACTICE.**

Where issues have been often presented, discussed, and decided in co-ordinate courts, agreeing in the construction of a particular patent, unless new features in the case distinguishing it from cases elsewhere adjudicated, the decisions of such co-ordinate courts should be accepted as final until the supreme court has had an opportunity to review and reverse their judgments.

**2. SAME—ANTICIPATION—BURDEN OF PROOF.**

The patent being *prima facie* good, the burden of proof on a question of anticipation is upon the defendant.

**3. THE DRIVEN WELL.**

Patent No. 73,425, known as "The Driven-Well Patent," issued for an improved method of sinking artesian wells, *held*, upon a conflict of testimony, not anticipated.

**4. SAME—REISSUE—VALIDITY OF.**

Where the validity of a reissue has been fully considered and adjudicated in other cases, and where, in the unsettled condition of the law, arising from recent decisions, a case involving the law is actually pending on appeal before the supreme court, this court will refrain from expressing an opinion.

In Equity.

*J. C. Clayton* and *A. Q. Keasbey,* for complainant.

*Wm. B. Maxon* and *Jas. Buchanan,* for defendant.

NIXON, D. J. This is a suit in equity, brought against the defendant for the infringement of reissued letters patent No. 4,372, granted to Nelson W. Green, assignor of the complainant, on May 9, 1871, for an "improvement in the methods of constructing artesian wells." The original patent, No. 73,425, was issued to said Green, January 14, 1868, upon his application therefor, filed May 17, 1866. The patent is popularly known as "The Driven-Well Patent," and the validity of the reissue has been the subject of controversy in the circuit courts of several districts, almost without a parallel in the history of patent litigations. It appears in this case that the contest began with the suit of *Andrews* v. *Carman,* before his honor, Judge Benedict, in the eastern district of New York; was continued in the several cases of *Andrews* v. *Wright,* before Judges Dillon and Nelson, in the district of Minnesota; of *Hine* v. *Wahl,* before Judge Gresham, in the district of Indiana; of *Andrews* v. *Cross,* before Judge Blatchford, in the northern district of New York; and of *Andrews* v. *Creegan,* before Judge Wheeler, in the southern district of New York. All these cases resulted in sustaining the validity of the patent, and

in a decree in favor of the complainants. It does not appear that any except one of them have been taken up to the supreme court on appeal, but have been acquiesced in by the respective defendants. Under these circumstances it would seem that the time had arrived when controversy over determined questions should cease in the subordinate courts. When six learned judges in different districts have substantially agreed in the construction of a patent, another judge in a co-ordinate court, under the same state of facts, should accept their decision as final, until the supreme court have had the opportunity of reviewing and reversing their judgment. Accordingly, when the case was called for hearing, I stated to the counsel that I was unwilling to take the time of the court in listening to the discussion of issues which had been so often presented, discussed, and decided, and that unless my attention was called to features in the case which distinguished it from those elsewhere adjudicated, I should be inclined to order a decree for the complainant on the authority of the suits in other districts.

The counsel of the respective parties agreed that all the testimony in the present case in regard to the existence of a driven well in the premises of Timothy H. Buxton, at Warsaw, in the state of New York, as early as the spring of 1858, was new, and had never been introduced or considered in any of the other cases. The argument, therefore, at the hearing, after the suggestion of the court, was mainly directed to the question whether in fact any well was there at that date, which, *in its process, construction, and mode of operation,* anticipated the alleged invention of Green.

I have given the evidence careful consideration, and find it so contradictory that I am quite perplexed in reaching a decisive judgment. Having no reason to suppose that any of the witnesses mean to distort the truth, it is clear that some of them are mistaken, and that it is hard to reconcile the many conflicting statements in regard to the facts of the case.

The principal witness in favor of the existence of a driven well in Warsaw as early as the spring of 1858 is Mr. Timothy H. Buxton, its alleged inventor and the owner of the premises where it was put down. He describes how it was done. "In the first place," he says, "I took a piece of gas-pipe   *   *   *   of the length I wanted and drilled in one end small holes sufficient to let water in, and then had a plug turned to put in the bottom end of the pipe, with a shoulder, so that the plug wouldn't drive up into the pipe; one end being small

enough to go up into the pipe, say four inches." This plug, about 10 inches in length from the shoulder and tapering to a point, was put in the bottom of the pipe. He then took a common crowbar, made a hole in the ground as far as he could with it, and then put the pipe in the hole and drove it down the depth that he supposed he could find water; then took a bar of round iron and put it in the pipe and punched out the wooden plug in the bottom; then screwed a cast-iron pump to the top of the pipe, began to pump and get water. He further states that Mr. Hiram Adams turned the block which was used for a plug at the lower end of the pipe, and drilled the holes in the pipe; that the pump, as thus constructed, was in constant use for smith purposes in the blacksmith shop for several years; that it was taken up when the ground was built over where it stood, and was afterwards put down again in the new shop, between the forges, in the same manner as above described when it was first made. It is well to remember in this connection, and in view of the testimony of John West, to which reference will be made hereafter, that Mr. Buxton stated, at a subsequent stage of his examination, that West was present during the whole time of putting down the second driven well in the new shop and dictated about it. He is strongly supported by the testimony of Hiram E. Adams, who carefully and minutely describes a pump that he saw put down on Buxton's premises on the west side of the blacksmith shop, north of the door and about two feet from the wall. He says that in the spring of 1858 he formed a partnership with one Silas J. Fargo for carrying on the business of turning, sawing, and planing; that it continued for one year, to the spring of 1859; that they occupied a shop belonging to C. & T. Buxton, and were to do their turning and sawing in their wagon business in consideration of their furnishing the shop; that when they took possession there was only one well on the Buxton premises; that during the year 1858 a pump was put down; that at the request of T. H. Buxton he turned a hickory plug for the end of an iron pipe and helped drill holes in the side of the pipe and fitted the plug to the end. The pipe was about an inch and a half in diameter and from 10 to 14 feet in length. The witness recollects seeing workmen sinking the tube in the ground and attaching a pump to the upper end, which was about two and a half feet above the ground; that water was obtained by pumping, and used in the work of the blacksmith shop for probably two or three years afterwards; that he used the water from the pump for his own work on the premises; and that

he was in a line of persons to furnish water from it to extinguish the first fire of Hurd & Gates' planing-mills, which occurred in the year 1859.

Eli Dibble testifies that he was a carriage-maker in the employ of the Messrs. Buxton for upward of 20 years, and left them in the month of September, 1861. He remembers the well north of the door on the west side of the blacksmith shop, and that water was pumped from it until it was drained at the fire of Hurd's planing-mills in 1859. He states that the well was an iron pipe stuck up out of the ground, and a common cast-iron pump on top of it.

F. L. Hain says he was a master builder, and did much carpenter work for the Buxtons; that in the year 1859 he shingled the roof of a small house, which stood on their premises about three rods to the east of the blacksmith shop. While engaged in this work he was in the habit of passing around the west end of the shop half a dozen times a day, to go to the planing-mill for lumber. He recollects the iron pipe sticking out of the ground, with a pump on the top, just north of the door, on the west side of the shop, and pumped water out of it a good many times.

There is more corroborating testimony of the same sort, and it all points to and describes the well which is covered and claimed by the Green patent, and *if true* as to the date of construction his invention is clearly anticipated.

The patent being *prima facie* good, the burden of proof on a question of anticipation is upon the defendant. Does the rebutting evidence of the complainant suggest a reasonable doubt of its truth? He has summoned a number of witnesses, but it is sufficient for the purposes of this case to refer to the salient points of the testimony of a few of the more important.

In the first place, these witnesses were all old residents of Warsaw, and they agree in the statement that the first driven well they ever heard of in that town was put down in the street in front of the barn of the brick hotel property in the summer or fall of 1865, and that it attracted much attention at the time, and was discussed by the citizens generally as a new invention.

In view of the number of witnesses who now testify to their knowledge that Buxton invented and sunk another driven well of the same construction as early as the year 1858 or 1859, it seems rather singular that no one then remembered or adverted to the fact of its previous existence and use in the town.

In the next place, Elihu R. Benson, Charles P. Williams and Calvin W. Bisby were in the employ of the Buxtons in their manufacturing establishment for a number of years, including the years 1858 and 1859. They were on the premises daily, and give intelligent accounts of the sources whence they procured water for carrying on the work of the manufactory. They severally testify that no driven well existed there to their knowledge, and they do not understand how it could have been there without coming under their observation.

Chester P. Hurd and Ira N. Hurd were in the lumber trade in connection with the firm of Hurd & Gates, whose place of business was immediately in the rear of C. & T. Buxton. Their mode of access was along a 15-foot lane or alley, over the Buxton premises. They were thus obliged to pass and repass to and from their work and meals every day. Their occupation also made it necessary for them to visit the shops of Buxton daily. They distinctly remember the dug well,—an ordinary stoned well, near one corner of the blacksmith shop,—but they never heard of a driven well in Warsaw before the year 1865. If there had been one on Buxton's property they think that they should have known and remembered it.

The testimony of John West renders it still more incredible that a driven well existed in Warsaw in the year 1859. He states that he has lived in Warsaw for 28 years past; that he never heard of a driven well there until the summer of 1865, when two or three men came from Bath or Penn Yan and put down one on the brick hotel property; that it excited great attention as a novelty—a hundred men or more being present; that he obtained the right to drive these wells in Warsaw shortly afterwards, and put down in the town from 75 to 100; that Mr. Buxton employed him to sink *three* in different places on his property, one of which was in his blacksmith shop; that he paid him the usual royalty for the patent-right; and that all this occurred in the early part of the year 1867. The circumstances attending the sinking of the well in the blacksmith shop are so inconsistent with any theory that Buxton had previously invented and used a few feet distant, for several years, a driven well, that I quote his statement of what took place. The witness says:

" He [Buxton] took me into the shop and showed me where he wanted the well; asked me if I thought I could make a drive well there. I told him I thought I could. He said 'he had a good well, a dug well, just outside of the shop; plenty of water, but it got dirty; and thought if he had a drive well inside it would be better for his boys.'"

Such evidence greatly impairs the force and value of the testimony offered to prove the prior invention and use of the driven well. Green's invention was in the year 1861. Buxton says that a few years elapsed—how many he could not say—between the time of his sinking the first driven well and the date when West put down the second, and he is unable to indicate the year when the latter took place. Nor does he attempt to explain why he paid another a royalty for the privilege of using his own invention. A memory so defective as to allow its possessor to forget, in a few years, that he has made *one of the most remarkable inventions of the century*, cannot be depended on for accuracy in the statement of transactions which took place 20 years ago.

The complainant is entitled to a decree.

It will be observed that I have made no reference to the evidence and argument on the question of the validity of the reissue. I have purposely refrained from expressing any opinion: (1) because it has been fully considered and adjudicated in the other cases; and (2) because, in the unsettled condition of the law, arising from some recent decisions of the supreme court, I prefer to leave that tribunal to determine it in the case now pending on appeal from the circuit court of Indiana.

NOTE BY COUNSEL. In the answer of the defendant in the above cause there were set up all the defences used in patent causes, and over 200 names of persons alleged to have had prior knowledge of driven wells at 76 places, including the following *alleged* driven wells: Slater's, at Hunt's, Livingston county, New York; Talman's, at Preble, Cortland county, New York; and the well at Independence, Iowa; also 26 alleged prior American and foreign patents, and 48 prior, printed, American, French, English, and German publications.                          J. C. CLAYTON.