**OEN YIN–CHOY, Petitioner–Appellant,**

v.

**Glen S. ROBINSON, U.S. Marshal for the Northern District of California, Respondent–Appellee.**

**No. 87–15055.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 1988.

Decided Oct. 5, 1988.

Cedric C. Chao, Michael M. Carlson, Thomas P. Reilly, Morrison & Foerster, San Francisco, Cal., for petitioner-appellant.

Eric J. Swenson, Asst. U.S. Atty., Dept. of Justice, San Francisco, Cal., for respondent-appellee.

Before TANG, SCHROEDER and NELSON, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from the district court's denial of a petition for a writ of habeas corpus which the appellant filed to prevent his extradition to Hong Kong. The Crown Colony of Hong Kong seeks extradition of appellant Oen Yin–Choy from the United States to stand trial on six counts of false accounting and one count of publishing a false statement. The extradition proceeding is set against the historic backdrop of the scheduled reversion of Hong Kong from the United Kingdom to the People's Republic of China in 1997. Oen's principal contention is that he cannot lawfully be extradited under the applicable extradition Treaty between the United States and the United Kingdom. Oen contends that as a result of the contemplated 1997 reversion he may find himself subject to the exercise of China's criminal jurisdiction, in violation of the Treaty. We hold that no part of the extradition Treaty bars the extradition ordered by the district court.

Oen also challenges the sufficiency and admissibility of evidence in the extradition proceeding. Because a certification of extraditability is not a final order, no direct appeal from the decision will lie and review is available only by way of a petition for habeas corpus. *Collins v. Miller*, 252 U.S. 364, 369, 40 S.Ct. 347, 349, 64 L.Ed. 616 (1920); *Caplan v. Vokes*, 649 F.2d 1336, 1340 (9th Cir.1981). The scope of review in such instances is restricted to inquiring whether (1) the extradition judge had jurisdiction to conduct extradition proceedings; (2) the extradition court had jurisdiction over the fugitive; (3) the Treaty of extradition was in full force and effect; (4) the crime fell within the terms of the Treaty; and (5) there was competent legal evidence to support a finding of extraditability. *Emami v. United States Dist. Court for the N. Dist. of California*, 834 F.2d 1444, 1447 (9th Cir.1987) (quoting *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir.), *cert. denied*, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978)). *See also Theron v. United States Marshal*, 832 F.2d 492, 495 (9th Cir.1987), *cert. denied*, —— U.S. ——,

108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). Oen's claims are without merit under the limited standards applicable to review of extradition proceedings.

## BACKGROUND

Extradition to the Crown Colony of Hong Kong is governed by the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland ("Treaty"), June 8, 1972, 28 U.S.T. 227, T.I.A.S. No. 8468, and by the Supplementary Treaty Concerning the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland ("Supplementary Treaty"), ratified and entered into force December 23, 1986 (132 Cong. Rec. S9120 (daily ed. July 16, 1986)).

The United Kingdom leased the New Territories of Hong Kong from China in 1898 for a period of ninety-nine years. Convention of Beijing, June 9, 1898, in 1 *Treaties and Agreements with and Concerning China*, 1894–1919, 130, No. 1898/11 (1921). The remaining parts of Hong Kong were ceded to the United Kingdom in 1842 and 1860. *See* Comment, *The Reversion of Hong Kong to China: Legal and Practical Questions*, 21 Willamette L.Rev. 327 (1985). All of Hong Kong will revert to the People's Republic of China on July 1, 1997, pursuant to the Joint Declaration of the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the People's Republic of China on the Question of Hong Kong with Annexes, Beijing, December 19, 1984, ratified and entered into force May 27, 1985, T.S. No. 26 (1985), Cmnd. 9543 (joint declaration).

These extradition proceedings were instituted on April 15, 1987, by the United States Attorney on behalf of the Government of the United Kingdom and the Crown Colony of Hong Kong. After a two-part extradition hearing, the district court entered a certification of extraditability on September 4, 1987, and subsequently denied the petition for habeas corpus on November 13, 1987.

## DISCUSSION

I. *The Lawfulness of the extradition under the Treaty.*

■ Oen argues that the district court lacked jurisdiction to order his extradition because the Hong Kong Government has not satisfied requirements of the extradition Treaty. His arguments are based upon Article XII(1) of the Treaty which provides that the party requesting extradition, in this case Hong Kong, shall not extradite the fugitive to a third state. It further provides that after being extradited, the person shall not be charged with any offenses other than the offenses for which the party was extradited. The provision in relevant part reads as follows:

[A] person extradited shall not be detained or proceeded against in the territory of the requesting Party for any offense other than an extraditable offense established by the facts in respect of which his extradition has been granted, or on account of any other matters, nor be extradited by that Party to a third State—(a) until after he has returned to the territory of the requested Party; or (b) until the expiration of thirty days after he has been free to return to the territory of the requested Party.

Treaty, Article XII(1). The requirement that an individual be tried only for offenses for which extradition has been sought is generally referred to as the principle of "speciality." *See Theron*, 832 F.2d at 496.

Oen first contends that if he is extradited and convicted, he may remain incarcerated in Hong Kong beyond July 1, 1997, the date on which full sovereign control over Hong Kong will revert to the People's Republic of China. He argues that if this scenario occurs, he will in effect have been extradited to China, a third state, in violation of the Treaty.

■ Even if Oen does remain in prison in 1997, the reversion of Hong Kong to Chinese authority does not result in an extradition within the meaning of Article XII(1).

The Supreme Court long ago defined "extradition" as the "surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within territorial jurisdiction of another, which, being competent to try and to punish him, demands his surrender." *Terlinden v. Ames*, 184 U.S. 270, 289, 22 S.Ct. 484, 492, 46 L.Ed. 534 (1902). We adopted that definition in *Stevenson v. United States*, 381 F.2d 142, 144 (9th Cir. 1967). Neither deportation nor surrender other than in response to a demand pursuant to Treaty constitutes extradition. *Id.; see also Emami*, 834 F.2d at 1453–54. Therefore, even if Oen becomes subject to Chinese authority pursuant to a reversion of sovereignty upon cession and termination of the British lease of Hong Kong, he will not have been extradited to China.

▪ Oen also contends that if he remains in Hong Kong after the transition to Chinese control, he will become subject to Chinese law and may be prosecuted for additional offenses or be subject to additional penalties in violation of the principle of speciality. He maintains that so long as such a possibility exists, Hong Kong has not met an implied condition in the extradition Treaty that Hong Kong will guarantee no prosecutions by successor governments. We find no support for such an interpretation.

The Treaty constitutes commitments between the United States and the United Kingdom on behalf of its Crown Colony. It does not purport to include commitments by successor governments or third states. *In re Tang*, 674 F.Supp. 1058, 1068–69 (S.D.N.Y.1987). Were the Treaty to be interpreted as Oen asks, extradition to Hong Kong would be the exception rather than the rule because it would be limited in practice only to extraditions for crimes which could be punished for a term expiring before the reversion date. There is no indication that the United Kingdom and the United States had any such intention when they expressly made the Supplementary Extradition Treaty applicable to Hong Kong on January 1, 1988, at a time when the impending reversion was fully understood. *See* Exchange of Notes of August 19 and 29, 1986, December 23, 1986, and December 31, 1987.[1]

Oen's contention that Hong Kong has not met the requirements of the Extradition Treaty are groundless; thus, the district court had jurisdiction to determine Oen's extraditability.

## II. *Dual Criminality*

▪ Oen contends that his offenses are not extraditable because his conduct failed to satisfy elements of corresponding U.S. offenses. Under the principle of dual criminality, no offense is extraditable unless it describes conduct which is criminal in both jurisdictions. *Emami*, 834 F.2d at 1449. The Treaty at issue here expressly incorporates this principle. Treaty, Article III.

▪ To satisfy dual criminality, the name by which the crime is described in the two countries need not be the same, nor does the scope of liability for the crime need to be the same. *See Emami*, 834 F.2d at 1450. "Rather, dual criminality exists if the 'essential character' of the acts criminalized by the law of each country are the same and if the laws are 'substantially analogous.'" *Theron*, 832 F.2d at 496 (quoting *Wright v. Henkel*, 190 U.S. 40, 58, 23 S.Ct. 781, 785, 47 L.Ed. 948 (1903)). Thus, "each element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States. It is

---

1. In addition, the Joint Declaration between the United Kingdom and China specifically provides that the laws previously in force in Hong Kong shall remain in effect unless they contravene the Basic Law of the Hong Kong Special Administrative Region. (Joint Declaration at 1, 5). The current judicial system will be maintained (*id.* at 5–6), individual liberties are guaranteed and the Joint Declaration explicitly states that the provisions of the International Covenant on Civil and Political Rights, in force March 23, 1966, G.A. Res. 2200A, 21 G.A.O.R., supp. (No. 16) 52, U.N. Doc. A/6316 (1966), and the Covenant on Economic, Social and Cultural Rights, in force January 3, 1976, G.A. Res. 2200A, 21 G.A.O.R., supp. (No. 16) 59, U.N. Doc. A/6316 (1966), shall remain in force. *Id.* at 12. Article 15(1) of the Civil and Political Covenant prohibits ex post facto laws and punishments and Article 14 guarantees rights of due process.

enough that the conduct involved is criminal in both countries." *In re Russell*, 789 F.2d 801, 803 (9th Cir.1986).

 The offenses with which Oen is charged, false accounting and publishing a false statement, are listed in the schedule of offenses referred to in Article III of the Treaty. Thus, the Treaty specifically refers to the offenses with which Oen is charged, and the requirement of dual criminality is met. In addition, dual criminality is satisfied because the Hong Kong crimes of false accounting and publishing a false statement are substantially analogous to the federal crime of making a false entry in a bank statement. *See* 18 U.S.C. § 1005.[2] Hence, because the conduct involved is criminal in both countries, the requirement of dual criminality is satisfied. *See Russell*, 789 F.2d at 803. *See also Emami*, 834 F.2d at 1450 (dual criminality found where "[t]he substantive conduct each statute punishes is functionally identical").

Oen argues that the extradition court must make specific findings regarding dual criminality, and that it failed to do so. The extradition record, however, contains sufficient identification of corresponding offenses, as required by *Caplan*, 649 F.2d at 1344.

### III. *Evidentiary Issues*

Oen raises a number of challenges to the evidence, none of which merits lengthy discussion. The most substantial relate to the admission of ten witness statements translated from Chinese into English. Oen contends that the extradition court erred in admitting the ten translated affidavits because they were not sworn statements, as required under the Treaty. Oen also contends that the extradition court erred in denying him the opportunity to review the original Chinese statements that were translated into English, and by failing to consider objections to the competence of this evidence.

The Treaty requires that statements received in extradition proceedings be sworn or affirmed. Treaty, Article VII(5); *Zana-*

*zanian v. United States*, 729 F.2d 624, 627 (9th Cir.1984). Oen essentially argues that because the witnesses could not understand the English translations, any affirmation pertaining to these statements is invalid. The extradition court and the habeas court made clear, however, that they were relying on the translator's affirmations that the witnesses were interrogated and the translations represented accurate translations of the witnesses's statements. Thus, it is irrelevant whether the witnesses's original statements were properly sworn.

Oen next argues that he should be permitted to review the witnesses's original ten Chinese statements. The extradition court concluded there were no original written Chinese statements by the witnesses; rather, the court found that there were only investigator's notes of the statements. The habeas court affirmed this conclusion.

 The evidence on this point is unclear. Oen relies primarily on a government affidavit which appears to refer to original Chinese statements. Another affidavit states that evidence elicited from the interviews in Chinese were "recorded in the statement format," and that these drafts were handed to the witnesses for their revisions. However, the affidavits refer only to "statements" made in Chinese without specifying whether or not they were written or oral, and to "conversations" with the witnesses, which suggests there were no written statements. In addition, one police affidavit states that the police conducted several interviews with certain individual witnesses, which also suggests there never were any original written statements. Because there is conflicting evidence on this point, the court's factual finding that there were no original Chinese statements in writing is not clearly erroneous. *See Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir.), *cert. denied*, 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986) (factual findings reviewed under clearly erroneous standards).

---

**2.** Although the U.S. offense is not identical to the Hong Kong offenses, the essential character of the acts criminalized is the same. *See Theron*, 832 F.2d at 496.

Oen also argues that the extradition court erred by failing to consider over 180 objections to the competency of the government's evidence, including a challenge to the reliability and competency of the ten Chinese translations. The Extradition Treaty between the United States and Great Britain provides that:

> any deposition or statement or other evidence given on oath or affirmed, or any certified copy thereof shall be received in evidence in any proceedings for extradition (a) if it is authenticated ... by a judge, magistrate or other competent authority of the requesting Party ... and (b) where the requesting Party is the United Kingdom, by being sealed with the official seal of the appropriate Minister and certified by the principal diplomatic or consular officer of the United States of America in the United Kingdom....

Treaty, Article VII(5)(b). In addition, 18 U.S.C. § 3190 which governs the admissibility of evidence in extradition cases, provides that items offered in evidence

> shall be received and admitted as evidence on such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

18 U.S.C. § 3190.

■ Oen does not claim that the documents he seeks to exclude were not properly authenticated and certified by the appropriate officials. We have indicated that authentication is the only requirement for admissibility of evidence under general United States extradition law. *Emami*, 834 F.2d at 1451. Thus, Oen's challenges to the reliability and competency of the evidence fail.

■ Oen argues that the challenged evidence is inadmissible under section 3190 because it would be inadmissible under Hong Kong law. The language of 18 U.S.C. § 3190 requires admission of documents or other evidence "if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused shall have escaped."

We find persuasive the Sixth Circuit's interpretation of section 3190 rejecting a similar contention that evidence must be admissible under the laws of the requesting state. *See O'Brian v. Rozman*, 554 F.2d 780, 783 (6th Cir.1977). Section 3190 does not on its face require that evidence be admissible in the foreign state. The statute only requires an authentication that would entitle the documents to be "received" for similar purposes in the tribunals of the foreign country. Evidence properly authenticated, proved by a certification of the principal resident United States diplomatic or consular official, "shall be received *and* admitted as evidence" in United States proceedings. 18 U.S.C. § 3190 (emphasis added). Because the evidence in this case was properly authenticated, the district court did not err in refusing to consider the admissibility of the evidence under Hong Kong law.

## IV. *Alleged Due Process Violations*

■ Oen contends that the district court violated his due process rights when it denied his request to cross-examine an individual who submitted an affidavit in support of extradition. However, the Second Circuit has held that there is no right to cross-examination in extradition proceedings. *See Messina v. United States*, 728 F.2d 77, 80 (2d Cir.1984); *Simmons v. Braun*, 627 F.2d 635, 636 (2d Cir.1980). We agree with the statement in *Messina* that

> [a]s has been pointed out repeatedly, "[a]n extradition hearing is not the occasion for an adjudication of guilt or innocence." *Melia v. United States*, 667 F.2d 300, 302 (2d Cir.1981). The evidentiary rules of criminal litigation are not applicable. *Id.; Simmons v. Braun*, [627 F.2d 635,] 636 [(2d Cir.1980)]; Fed. R.Crim.P. 54(b)(5); Fed.R.Evid.

1101(d)(3). As in the case of a grand jury proceeding, a defendant has no right to cross-examine witnesses or introduce evidence to rebut that of the prosecutor. *Charlton v. Kelly*, 229 U.S. 447, 462 [33 S.Ct. 945, 950, 57 L.Ed. 1274] (1913); *see United States v. Y. Hata & Co.*, 535 F.2d 508, 512 (9th Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 87, 50 L.Ed.2d 92 (1976) [(holding no right to cross-examine in grand jury proceedings)].

*Messina*, 728 F.2d at 80.

Accordingly, Oen was not denied due process by the extradition court's refusal to allow him to cross-examine.

■ Oen also contends that his due process rights were violated because he allegedly was not adequately informed of the charges against him. A charge in an extradition proceeding should set forth "clearly and briefly the offense charged," but "[i]t need not be drawn with the formal precision of an indictment." *Yordi v. Nolte*, 215 U.S. 227, 230, 30 S.Ct. 90, 91, 54 L.Ed. 170 (1909) (quoting *Ex parte Sternaman*, 77 F. 595, 597 (N.D.N.Y.1896), *aff'm sub nom. Sternaman v. Peck*, 80 F. 883 (2d Cir. 1897)).

The warrant of arrest was sufficiently clear to apprise Oen of the charges against him; it stated the ordinances Oen was charged with violating, and set forth some of the basic facts supporting the charges. The fact that the ordinances provide for different types of intent (i.e., false accounting with a view to gain for oneself or for another or to cause a loss to another) does not render the charges invalid. *Cf. Kelly v. Griffin*, 241 U.S. 6, 13, 36 S.Ct. 487, 489, 60 L.Ed. 861 (1916) (failing to object to an extradition complaint which charged "perjury, obtaining money by false pretenses, and, co-jointly, stealing or embezzling and unlawfully receiving money and other property of the King which had been embezzled, stolen or fraudulently obtained by means of a conspiracy...."). Thus, the government did not violate Oen's due process rights by giving him the notice it did.

■ Oen also contends he was denied due process in his extradition proceeding because the extradition court denied his motion for discovery. Although there is no explicit statutory basis for ordering discovery in extradition proceedings, the extradition court has the inherent power to order such discovery procedures as law and justice require. *See Quinn*, 783 F.2d at 817 n. 41. In exercising its discretion to grant or deny discovery, an extradition court should consider that "'extradition proceedings are not to be converted into a dress rehearsal for trial' and 'whether the resolution of the contested issue would be appreciably advanced by the requested discovery.'" *Emami*, 834 F.2d at 1452 (quoting *Quinn*, 783 F.2d at 817 n. 41).

■ The extradition court did not abuse its discretion in denying Oen's discovery motion. Oen has made no showing that the requested discovery would appreciably advance his negation or explanation of the government's showing of probable cause.

## V. *Probable Cause*

Oen contends that there is insufficient evidence to establish probable cause to extradite him. In an extradition proceeding, this court reviews the evidence to determine "whether there was any evidence warranting the finding that there was a reasonable ground to believe the accused guilty." *See Theron*, 832 F.2d at 495. Thus, Oen's appeal on this issue must fail if there is *"any* evidence of probable cause." *Id.* at 501 (quoting *Artukovic v. Rison*, 784 F.2d 1354, 1355–56 (9th Cir. 1986)) (emphasis in original). The Supplementary Treaty defines probable cause as "whether there is sufficient evidence to warrant a man of reasonable caution in the belief that ... an offense has been committed by the accused." Supplementary Treaty, Article II.

■ To establish probable cause under the false accounting charges, the record must contain evidence that the loans were false, that Oen knew they were false, and that he intended to gain for himself or for another. *See* Hong Kong Theft Ordinance § 19(1)(a). The affirmation of the account-

ant who investigated Union Bank provides adequate evidence that the loans were false. In addition, the district court could infer from the record that Oen knew the loans were false. Several affiants stated that all Union Bank's Indonesian loans were Oen's responsibility. In addition, Oen apparently knew of irregularities regarding these loans, representing a departure from normal banking procedure. Finally, Oen was responsible for receiving the money from the false loans, which was then used to make payments in an allegedly fraudulent offshore deposit scheme. The fact that Oen controlled the Indonesian loans and the offshore deposit accounts, coupled with the evidence that these loans differed in several important respects from normal bank loans, raises an inference that Oen knew the loans were false. Although there is no direct evidence of Oen's intent, his intent to produce a gain for himself and the Bank, or for another company, may be inferred from the structure and result of the transactions. Thus, there is evidence to support a reasonable belief that Oen committed the offense of false accounting.

 To establish probable cause that Oen published a false statement, the evidence must show that Oen was a corporate officer who published or concurred in publishing a material statement that is or may be misleading, false, or deceptive, and that he did so with the intent to deceive members or creditors of the corporation. *See* Hong Kong Theft Ordinance § 21(1). There was sufficient evidence to establish probable cause that Oen engaged in publishing a false statement. First, Oen is an officer of the bank. Second, Oen concurred in publishing a statement of the bank's assets which included the false loans. Finally, Oen's intent to publish a false statement may be inferred from the resulting gain to himself and the bank.

## VI. *Recusal*

 Oen argues that because the same judge presided over both the extradition and the habeas proceedings, Oen was de-

nied meaningful review. The precise issue of whether an extradition judge must recuse in habeas proceedings is an issue of first impression in this circuit. The two other circuits which have addressed this issue, however, have held that a judge who presides over an extradition hearing need not recuse and may hear a habeas corpus action. *See Demjanjuk v. Petrovsky,* 776 F.2d 571, 577 (6th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986); *David v. Attorney General,* 699 F.2d 411, 416–17 (7th Cir.), *cert. denied,* 464 U.S. 832, 104 S.Ct. 113, 78 L.Ed. 2d 114 (1983).

This court adopts the holdings of those circuits. Federal district judges are frequently called upon to reconsider prior rulings without recusing themselves. *See Withrow v. Larkin,* 421 U.S. 35, 57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712 (1975) (having the same judge retry a case after reversal does not violate due process); Fed. R.Civ.P. 59 (new trial); Fed.R.Civ.P. 60 (relief from judgment or order); Fed.R. Crim.P. 35 (reduction or correction of sentence). Allowing the extradition judge to review his actions in the context of a habeas proceeding both avoids review by one district judge of the actions of another district judge, and promotes judicial economy because the extradition judge is familiar with the facts and circumstances surrounding the extradition request. Thus, the district court did not err in refusing to recuse itself from reviewing as habeas court its decision of extraditability.

The judgment is AFFIRMED.