UNITED STATES of America, Plaintiff,

v.

Vincent Michael MARCONI, Defendant.

No. CR 93–842–ER.

United States District Court,
C.D. California.

Sept. 13, 1995.

**460**

Ronni B. MacLaren, Asst. U.S. Atty., United States Attorney, Nora M. Manella, Los Angeles, CA, for Plaintiff.

Donald Randolph, Santa Monica, CA, for Defendant.

## MEMORANDUM OPINION ON EXTRADITED DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

RAFEEDIE, District Judge:

### Introduction

Defendant Vincent Marconi has been indicted on eighteen counts of mail fraud in violation of 18 U.S.C. § 1341. The Defendant was arrested in the United Kingdom and extradited pursuant to the Extradition Treaty between the United States and the United Kingdom. He now moves to dismiss the indictment on the grounds that the indictment violates the doctrines of dual criminality and specialty.[1] The Court has considered the papers filed in support of and in opposition to the motion, and the oral arguments of counsel, and hereby DENIES the motion.

### Background Facts

From 1979 to 1992, Marconi and co-defendant Shelley Walsh[2] engaged in a fraudulent scheme to defraud the California State Compensation Insurance Fund.

Although this scheme involved at least four different incarnations of Marconi's temporary employment agency,[3] the thrust of the scheme remained the same: Marconi would apply for workers' compensation insurance from California, falsely underreport the number of employees on his payroll, and falsely state that they performed clerical or sales work, when in fact they mostly performed manual labor. As a result, Marconi's premiums for the compensation insurance were considerably lower than what they should have been.

On September 23, 1993, the U.S. government charged Marconi and Walsh each with eighteen counts of mail fraud in violation of 18 U.S.C. § 1341. Each count corresponded to a separate payroll report that Marconi and Walsh mailed to the state compensation agency, beginning in September 22, 1988 and ending in April 2, 1992.

Following the indictment, Marconi fled to the United Kingdom. The U.S. government sought extradition through the proper channels, and presented the United Kingdom with the indictment and evidence against Marconi. Based on that information, a British prosecutor drafted twenty charges against Marconi, proceeding as if Marconi had committed his criminal acts within the United Kingdom. The British court quashed eight of those charges, all of which related to one British theft statute. None of the remaining twelve draft charges were under that particular statute. Based on the twelve draft charges, the United Kingdom then extradited Marconi to the United States on May 2, 1995.

### Analysis

Marconi argues that the indictment against him fails for two reasons. First, he argues

---

1. Marconi has also attacked on evidentiary grounds the declaration of James Lewis, a British prosecutor. Without expressing an opinion as to the merits of Marconi's challenge, the Court notes simply that it did not rely on that declaration in reaching its decision.

2. Walsh pleaded guilty and has already been sentenced.

3. The names of the agencies were Temps–R–Us, Certified Staffing, West Coast Personnel, and Pacific Payroll.

that the indictment violates the doctrine of "dual criminality." Second, he argues that the indictment violates the doctrine of "specialty."

### 1. Dual Criminality

██ Under the doctrine of dual criminality, "no offense is extraditable unless it describes conduct which is criminal in both jurisdictions." *Oen Yin–Choy v. Robinson*, 858 F.2d 1400, 1404 (9th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989). The Extradition Treaty between the United States and the United Kingdom specifically incorporates this principle in Article IX(1). EXTRADITION TREATY, June 8, 1972, United States–United Kingdom, 28 U.S.T. 227, 232, T.I.A.S. No. 8468.

To satisfy this doctrine, however, the offenses need not be labelled the same in each country, nor must they have the same scope of liability. Rather, "dual criminality exists if the 'essential character' of the acts criminalized by the law of each country are the same and if the laws are 'substantially analogous.'" *Yin–Choy*, 858 F.2d at 1404; *see also Collins v. Loisel*, 259 U.S. 309, 312, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922).

██ The indictment against Marconi charges him with mail fraud in violation of 18 U.S.C. § 1341. Thus, for Marconi to have been extradited properly, the essential character of mail fraud must be similar to some equivalent crime in the United Kingdom.

██ The elements of mail fraud are that (1) the Defendant made up a scheme or plan for obtaining money or property by making false statements; (2) the Defendant knew the statements were false; (3) the statements were of a kind that would reasonably influence a person to part with the money or property; (4) the Defendant acted with the intent to defraud; and (5) the Defendant used, or caused to be used, the mails to carry out the scheme.[4]

The United Kingdom, however, does not have a crime of mail fraud. The closest analog is the British crime of theft, of which there are multiple sections.

Section 17 of the Theft Act of 1968 states:

(1) Where a person dishonestly, with a view to gain for himself or another or with intent to cause loss to another,—

> (a) destroys, defaces, conceals or falsifies any account or any record or document made or required for any accounting purpose; or

> (b) in furnishing information for any purpose produces or makes use of any account, or any such record or document as aforesaid, which to his knowledge is or may be misleading, false, deceptive in a material particular; he shall, on conviction on indictment, be liable to imprisonment for a term not exceeding seven years.

Section 1 of the Theft Act of 1978 states:

(1) A person who by any deception dishonestly obtains services from another shall be guilty of an offence.

(2) It is an obtaining of services where the other is induced to confer a benefit by doing some act, or causing or permitting some act to be done, on the understanding that the benefit has been or will be paid for.

Marconi seizes upon the fact that neither § 1 nor § 17 has an element relating to the use of the mails, and that therefore the U.S. crime of mail fraud does not have a proper analog in British criminal law.

The fact that the British crime does not have a mail use element is not relevant, because use of the mails is merely a jurisdictional element. That is, the use of the mails makes the crime federal in nature. The Protocol of Signature to the Extradition Treaty states:

> Article III of the Treaty shall permit the Government of the United States of America to obtain the extradition of a person for an offense to which the Treaty relates when United States Federal jurisdiction is

---

4. Elements listed are from the *Ninth Circuit Model Jury Instruction* for Mail Fraud. This jury instruction is a current, accurate reflection of the law. *See Pereira v. U.S.*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954) (elements of mail fraud are (1) scheme to defraud and (2) use of mail to facilitate crime).

based upon interstate transport or transportation or the use of the mails or of interstate facilities, these aspects being jurisdictional only.

EXTRADITION TREATY, *supra.*

■ The Ninth Circuit, as well as other circuits, has considered the relationship of mail fraud to foreign crimes for extradition purposes and has held that the use of the mails need not be an element in the foreign crime for dual criminality to be satisfied. *Emami v. United States District Court,* 834 F.2d 1444, 1450 (9th Cir.1987); *United States v. Sensi,* 879 F.2d 888, 893 (D.C.Cir.1989); *United States v. Herbage,* 850 F.2d 1463, 1466 (11th Cir.1988).

The correct inquiry instead is whether the alleged conduct in the United States, which gives rise to charges of mail fraud, describes criminal conduct—to wit, theft or fraud—in Great Britain. *Emami,* 834 F.2d at 1450; *Sensi,* 879 F.2d at 894.

Marconi's alleged criminal conduct consisted of falsifying payroll statements and providing other false and misleading statements designed to obtain lower workers' compensation premiums. Marconi's use of the mails merely brings his fraudulent conduct within the purview of the federal government.

Marconi's conduct also constitutes an offense under § 17 and § 1 of the British Theft Acts. Section 17(1)(b) makes it a crime knowingly to furnish false, misleading, or deceptive information with an intent to profit himself. That section describes exactly what Marconi is alleged to have done: he provided

false information to the state fund with the intent to profit through lower premiums.

Section 1 of the 1968 British Theft Act covers the situation where a person obtains services through a deception. Again, that situation describes exactly what Marconi is alleged to have done: he provided false information and received the insurance services of the state workers' compensation fund through a deception.

Thus there is no question that the Defendant's indictment for mail fraud satisfies the doctrine of dual criminality.

Marconi's reliance on *United States v. Khan,* 993 F.2d 1368 (9th Cir.1993), is misplaced. In *Khan,* the Ninth Circuit held that 21 U.S.C. § 843(b) (use of a telephone to facilitate the commission of a drug felony), had no equivalent crime in Pakistan, and that prosecution of the defendant under § 843(b) therefore violated dual criminality.

■ Although *Khan* has some similarities to this case, it is not on point. The use of the telephone in § 843(b) [5] is not a jurisdictional element.[6] Instead, it is the mens rea element of § 843(b). The mens rea element of mail fraud, on the other hand, is the use of a scheme or plan to defraud.[7] Thus, what § 843(b) is aimed at eliminating is the use of the telephone in connection with a drug offense. What § 1341 is aimed at eliminating is the fraudulent scheme itself.

*2. Specialty*

■ The doctrine of specialty, also incorporated into the Extradition Treaty,[8] dictates that "an individual be tried only for offenses

---

**5.** 21 U.S.C. § 843(b) states:

It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter [Title 21, Chapter 13, Subchapter I] or subchapter II of this chapter.

**6.** This conclusion can be drawn readily from the fact that § 843(b) prohibits the use of communication facilities to commit, cause, or facilitate any felony under Title 21. Unlike fraud, the crimes in Title 21 have their own independent basis for federal jurisdiction. *See* 21 U.S.C. § 801 (providing Congressional findings detailing the effect that the illegal importation, manufacture, distribution, possession, and improper

use of controlled substances have on interstate and foreign commerce).

**7.** 18 U.S.C. § 1341 states in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter . . . shall be fined under this title or imprisoned not more than five years, or both.

**8.** Article XII of the Treaty provides:

(1) A person extradited shall not be detained or proceeded against in the territory of the

for which extradition has been sought." *Oen Yin–Choy v. Robinson*, 858 F.2d 1400, 1403 (9th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989). This doctrine requires that there be "a correspondence between the charges contained in the indictment and the facts presented to the British magistrate." *United States v. Sensi*, 879 F.2d 888, 895 (D.C.Cir.1989).

■ Each count of the U.S. indictment must meet two requirements to satisfy the doctrine of specialty. First, the count must charge an "extraditable offense." *Id.* at 895. Second, the count must be "established by the facts in respect of which [the defendant's] extradition has been granted." *Id.*

■ Specialty is based on international comity, and therefore "exists only to the extent that the surrendering country wishes." *United States v. Najohn*, 785 F.2d 1420, 1421 (9th Cir.) (citation omitted), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986). Nevertheless, courts allow the person who has been extradited to "raise whatever objections the rendering country might have." *Id.* (citing *United States v. Rauscher*, 119 U.S. 407, 419, 7 S.Ct. 234, 240, 30 L.Ed. 425 (1886)).

Marconi argues that the indictment violates the doctrine of specialty, because the facts that supported the other draft charges were based partially on time-barred conduct and also are not congruent with the facts underlying the U.S. indictment.

### a. Statute of Limitations

■ Marconi argues that because the first eight British draft charges concern conduct occurring before September 23, 1988, they cannot be used as the basis to support any count of the U.S. indictment that relied upon them.

The Extradition Treaty recognizes defenses based on the statute of limitations. Article V of the Treaty states in relevant part:

(1) Extradition shall not be granted if: . . .

(b) the prosecution for the offense for which extradition is requested has become barred by lapse of time according to the law of the requesting or requested Party.

EXTRADITION TREATY, *supra.*

The statute of limitations for mail fraud is five years. 18 U.S.C. § 3282. Thus, because the government indicted Marconi on September 23, 1993, any conduct occurring prior to September 23, 1988, is barred from prosecution.

■ Unfortunately, Marconi's argument misconceives the nature of the statute of limitations. Engaging in a fraudulent scheme is a continuing wrong, although liability for the federal crime of mail fraud does not arise until one uses the mails, thereby satisfying the jurisdictional requirement. It is true that the government would not be able to charge Marconi with mail fraud for *acts of mailing* occurring prior to September 23, 1988.

Marconi has not, however, been charged with mail fraud for any acts of mailing that occur prior to September 23, 1988, except for Count 1, which charges him with a mailing dated September 22, 1988. Even if Count 1 falls, however, there are still seventeen other counts that charge him with post-September 23, 1988 mailings.

■ Marconi's acts of fraud prior to that date are still evidence of his continuing fraudulent scheme to defraud the state compensation fund. In other words, in order to decide whether Marconi's April 2, 1992 mailing constituted mail fraud, the trier of fact is entitled to consider Marconi's pre-September 23, 1988 actions to determine whether Marconi had the requisite intent to defraud on April 2, 1992. The British court apparently considered such conduct in determining that Marconi was extraditable.[9]

The Court therefore rejects this argument.

### b. Incongruency in the Evidence

■ Marconi also argues that the facts underlying the British draft charges do not

---

requesting party for any offense other than an extraditable offense established by the facts in respect of which his extradition has been granted.

9. Marconi raises a clever argument that only the initial false application (or renewal thereof) for insurance constituted theft under British law, and that subsequent mailings of payroll reports were not theft. He offers this explanation as

correspond to the facts underlying the U.S. indictment, and that the government is therefore prosecuting him for crimes other than for which he had been extradited.

Marconi misconceives the purpose of the doctrine of specialty. Specialty exists to ensure that "an individual be tried only for offenses for which extradition has been sought." *Oen Yin–Choy v. Robinson*, 858 F.2d 1400, 1403 (9th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989). In *Sensi*, the D.C. Circuit explained that specialty "focuses on the evidentiary material that was submitted to the [British] magistrate." 879 F.2d 888, 896 (D.C.Cir.1989).

The relevant inquiry is whether the U.S. government supplied the British court with sufficient evidence to support extradition on each count of the indictment. Some disparity between the British draft charges and the U.S. indictment is to be expected, given the slightly different elements of the two crimes.

The declaration of Assistant U.S. Attorney Ronni MacLaren indicates that the government included the 18 count indictment against Marconi in its extradition request to Great Britain. In *Sensi*, the U.S. government had also included the indictment in its extradition request, and as a result, the D.C. Circuit held that "under these circumstances, it can in no way be said that the United Kingdom 'would object to prosecution.'" 879 F.2d at 896.[10]

The ultimate question, then, is whether Great Britain considered the evidence of mail fraud and extradited Marconi to be tried for those offenses. A review of the British in-

dictment shows that the British court considered the allegations of fraud based on false statements concerning the following companies to constitute extraditable crimes: Temps–R–Us (draft charges 2, 3); Certified Staffing (draft charges 7, 8); West Coast Personnel (draft charges 12, 13, 15); and Pacific Payroll (draft charges 17, 18, 20).

It is not material that the British court considered different evidence of Marconi's fraud from that which the U.S. indictment charges, in particular the dates of misrepresentations. The relevant factor is that the United Kingdom and the United States reached agreement that Marconi was engaged in a fraudulent scheme, relating to the four companies listed above, and with the intent of defrauding the California State Compensation Insurance Fund.

Given that the Court has concluded that mail fraud satisfies the dual criminality requirement, and that the U.S. government sought extradition for mail fraud, specialty in this case serves to ensure that Marconi is tried only for mail fraud, and not for other crimes.

Accordingly, the Court finds that specialty is satisfied in this case.

### Conclusion

For the foregoing reasons, the Court concludes that the indictment against Marconi violates neither dual criminality nor specialty. Accordingly, Marconi's motion to dismiss the indictment is DENIED.

IT IS SO ORDERED.

why the British court drafted charges with different dates than the U.S. indictment.

Even assuming arguendo that Marconi's interpretation of British law is correct, this argument has been covered by dual criminality. Mail fraud does not have to match the British crime of theft precisely. *Oen Yin–Choy v. Robinson*, 858 F.2d 1400, 1404 (9th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989). Nor does the scope of liability under both crimes have to match exactly. *Id.*

Since the use of the mails is, for the purposes of the Treaty, merely a jurisdictional element, the relevant offense conduct covered by § 1341 is

Marconi's scheme to defraud the State Compensation Fund. The fact that § 1341 may have a broader scope than do § 17 or § 1 of the British Theft Acts does not mean that dual criminality is violated.

**10.** In *United States v. Khan*, 993 F.2d 1368, 1373 (9th Cir.1993), the Ninth Circuit declined to follow *Sensi* on the ground that the language of the United States' extradition treaties with Great Britain and Pakistan were different with respect to the issue of specialty. That ground is not available in this case to distinguish *Sensi*, since this case involves the same treaty.