**Reza EMAMI, Petitioner–Appellant,**

v.

**UNITED STATES DISTRICT COURT FOR the NORTHERN DISTRICT OF CALIFORNIA, Respondent–Appellee,**

**Federal Republic of Germany, Real Party in Interest.**

**No. 86–2237.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1987.

Decided Dec. 18, 1987.

Ephraim Margolin, San Francisco, Cal., for petitioner-appellant.

Mark N. Zanides, Asst. U.S. Atty., San Francisco, Cal., for respondent-appellee.

Before MERRILL and TANG, Circuit Judges, and STEPHENS,* District Judge.

STEPHENS, Senior District Judge:

Dr. Reza Enami appeals from the denial of his petition for writ of habeas corpus. Emami's habeas petition sought to invalidate the district court's May 30, 1986, finding that Emami was extraditable to the Federal Republic of Germany (Germany) for criminal insurance fraud offenses. We have jurisdiction under 28 U.S.C. § 2253 (1982).

On appeal, Emami has raised three serious contentions. He contends that the district court lacked jurisdiction to order his extradition for "detention for investigation" where the failure of West Germany to file a public charge against appellant indicates that there is no guarantee appellant will actually be tried. Emami also contends that his alleged acts do not constitute an extraditable offense. Finally, appellant contends that the documents used to demonstrate probable cause for believ-

---

.* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

ing that he committed the charged offenses were not competent evidence because they consist primarily of reports of unsworn hearsay statements.

## BACKGROUND

Appellant Reza Emami is an Iranian citizen who operated a medical clinic in Bochum, Germany, from 1978 to 1985. Germany has charged that Emami defrauded the German public health insurance system and private insurance companies of 6.1 million Deutsche marks (over two million dollars) by billing for services not performed and for fictitious prescriptions and by overbilling for services actually rendered. German police arrested Emami in Bochum on October 2, 1985. The German prosecutor's affidavit reports that Emami made a partial confession during interrogation and was subsequently released on his own recognizance on October 3, 1985. Emami failed to appear at a scheduled hearing in a German court on October 10, 1985. Emami had instead traveled to the United States. Germany characterizes Emami's failure to appear as flight; Emami maintains he traveled to San Jose, California, in order to receive treatment for heart disease.

The Bochum Local Court issued a warrant for Emami's arrest on December 4, 1985. The United States Attorney, acting on behalf of the German government, applied to a federal magistrate for a provisional arrest warrant. The warrant issued, and on December 6, 1985, Emami was arrested in San Jose and taken into federal custody. At the time of his arrest, Emami suffered a heart infarction. Consequently, the initial bail proceedings in the case were held in San Jose's Good Samaritan Hospital.

Pursuant to the terms of the extradition treaty between the United States and Germany,[1] Germany submitted the documents supporting its request for Emami's extradition on January 28, 1986. The factual allegations supporting the extradition request are based on the sworn affidavit of German prosecutor Hermann Keller. Keller's affidavit contains fifty-two pages of detailed summaries of statements made by former employees and patients of Dr. Emami.

## DISCUSSION

No direct appeal is available from a district court's certification of extraditability because that decision is not a final order. *Caplan v. Vokes*, 649 F.2d 1336, 1340 (9th Cir.1981). Because review is available only by way of petition for habeas corpus, our inquiry in reviewing the denial of such a petition is considerably restricted. *Id.* Review of an extradition order in this circuit is limited to the following:

> On collateral review by habeas corpus, the Court is not permitted to inquire beyond whether (1) the extradition judge had jurisdiction to conduct extradition proceedings; (2) the extradition court had jurisdiction over the fugitive; (3) the treaty of extradition was in full force and effect; (4) the crime fell within the terms of the treaty; and (5) there was competent legal evidence to support a finding of extraditability.

*Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir.) *cert. denied*, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978); *see also, Theron v. United States Marshal*, 832 F.2d 492, 495 (9th Cir.1987).

With regard to the requirement that an extradition request contain competent legal evidence to support a finding of extraditability, article 14(3)(a) of the Treaty requires the submission of "such evidence as, according to the law of the Requested State, would justify [the extraditee's] arrest and committal for trial if the offense had been committed there ..." This language requires extradition under the Treaty to be based on competent evidence that would be sufficient to establish probable cause to hold a defendant for trial under United States law. *See Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir.1984).

Emami's contentions involve the first, fourth and fifth areas of inquiry identified in *Hooker*.

---

1. Treaty of Extradition June 20, 1978, United States–Federal Republic of Germany, 32 U.S.T. 1485, T.I.A.S. No. 9785 [hereinafter Treaty].

## I. JURISDICTION OF THE DISTRICT COURT

Emami contends that the district court acted without jurisdiction when it found him extraditable. Emami argues that under article 1(1) of the Treaty, extradition to Germany is contingent on a public charge or *Anklage* having been filed against the extraditee in Germany. Emami also argues that the district court had no jurisdiction to find him extraditable where the German government requested him for purposes of "detention for investigation" and not for prosecution.

### A. THE TREATY DOES NOT REQUIRE THE FILING OF A PUBLIC CHARGE

■ Whether a treaty conditions extradition upon the filing of formal charges is a question cognizable on appeal from the denial of a petition for habeas corpus. *In re Assarsson*, 635 F.2d 1237, 1240–41 (7th Cir.1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981). Article 1(1) limits the application of the Treaty to persons "who have been charged with an offense or are wanted by the other Contracting Party for the enforcement of a judicially pronounced penalty or detention order...." Emami contends that this language incorporated by reference paragraph 157 of the German Code of Criminal Procedure which defines "a person charged" as "an accused against whom the public charge [*Anklage*] has been preferred." In *Assarsson* the Seventh Circuit held that the existence of formal charges can be reviewable only if the treaty itself conditions extradition on the existence of formal charges. 635 F.2d at 1241. The Seventh Circuit's reasoning demonstrates that

grafting such a requirement as Emami proposes on to the treaty in the instant case is inadvisable.

■ In *Assarsson* the extraditee argued that the language of the extradition treaty between the United States and Sweden[2] made extradition conditional on the existence of formal charges. *Id.* at 1241. Article I of the U.S.–Sweden Treaty limited application of that treaty to persons "who have been charged with or convicted of any of the offenses specified in article II...." The Seventh Circuit interpreted this language, which is remarkably similar to article 1(1) of the treaty involved in the instant case, to impose no requirement that formal charges be filed. The *Assarsson* court noted that the word "charged" was used only in contrast to "convicted" so as to define the two classes of extraditees that the treaty covered. 635 F.2d at 1242. The court reasoned that the word "charged", used as a verb in the generic sense only to indicate "accused", could not be transmuted into a requirement that "charges", a noun, be filed. 635 F.2d at 1242–43. The same argument applies directly to the language of article 1(1) of the treaty in the instant case.

The *Assarsson* court further noted that the treaty required certain certified documents to accompany an extradition request. A copy of formal charges was absent from the list of required documents. The court reasoned that the parties had not intended to require such a document because the parties could have specifically included such a requirement but had not. *Id.* at 1243. Similarly, all the documents that the treaty with Germany required the German authorities to submit with its request to extradite Emami were before the district court.[3]

**2.** Convention on Extradition, Oct. 24, 1961, United States–Sweden, 14 U.S.T. 1845, T.I.A.S. No. 5496 [hereinafter U.S.–Sweden Treaty].

**3.** Article 14 of the Treaty lists the documents Germany is required to submit with an extradition request:

(2) The request shall be accompanied by:
 a) All available information concerning the identity and nationality of the person sought;

b) The text of all applicable provisions of law of the Requesting State concerning the definition of the offense, its punishment and the limitation of legal proceedings or the enforcement of penalties; and
c) A statement by a competent authority describing the measures taken, if any, that have interrupted the period of limitation under the law of the Requesting State.
(3) A request for the extradition of a person sought for the purpose of prosecution shall be

■ Finally, the *Assarsson* court refused to review compliance with Swedish criminal procedure for the same reasons this court refuses to entangle itself in the present parties' arguments concerning the procedural requirements of German law. We refrain from interpreting the requirements of German criminal procedure both out of respect for German sovereignty and because we recognize the chance of erroneous interpretation is much greater when we try to construe the law of a country whose legal system is not based on common law principles. *See Assarsson*, 635 F.2d at 1244.

## B. THE GERMAN GOVERNMENT INTENDS TO PROSECUTE EMAMI

■ In relation to international fugitives who have not yet been convicted, article 2(2)(a) of the Treaty specifies that extradition shall be granted "[f]or prosecution ..." Emami claims that Germany is not yet committed to prosecuting him but instead has requested his extradition only for "detention for investigation" under paragraph 112 of the German Code of Criminal Procedure. Our reservations against deciding questions of German criminal procedure set forth above apply equally to this contention. The German government has stated that Emami is wanted for prosecution both in its request for Emami's provisional arrest and in its request for Emami's extradition. These statements of intention on the part of the German government satisfy the requirement of article 2(2)(a).

## II. EMAMI HAS BEEN ACCUSED OF CRIMES FOR WHICH HE MAY BE EXTRADITED

Emami claims that the crimes with which he is charged are not extraditable offenses under the terms of the Treaty. Article 2(1) defines extraditable offenses as:

a) Offenses described in the Appendix to this Treaty which are punishable under the laws of both Contracting Parties;

b) Offenses, whether listed in the Appendix to this Treaty or not, provided they are punishable under the Federal laws of the United States and the laws of the Federal Republic of Germany.

Paragraph 13 of the appendix to the Treaty establishes the following crimes as extraditable offenses:

Fraud, including offenses against the law relating to the unlawful obtaining of money, property, or securities, to fiduciary relationships or to the exploitation of minors.

Germany claims Emami has been accused of a crime that falls within the crime of fraud as specified in the Treaty. The German prosecutor has alleged that Emami has violated paragraph 263 of the German Penal Code which provides:

A person who damages the property of another person by producing or maintaining an error through fraudulent misrepresentation or by distortion or suppression of true facts, with the intent to obtain an illegal pecuniary benefit for himself or a third person, shall be subject to punishment....

Emami claims that violations of paragraph 263 are not extraditable offenses under the Treaty because paragraph 263 does not define fraud as the crime is generally defined in American criminal law. Specifically, he claims that unlike the American crime, the German crime does not require a knowing false representation of a material fact made with the intent to deceive. Emami essentially argues that extradition in his case would violate the principle of dual criminality. Under this principle, "no offense is extraditable unless it is criminal in both jurisdictions." *Caplan v. Vokes*, 649 F.2d 1336, 1343 (9th Cir.1981)

accompanied, in addition to the documents provided for in paragraph (2), by:
a) A warrant of arrest issued by a judge of a Requesting State and such evidence as, according to the law of the Requested State, would justify his arrest and committal for trial if the offense had been committed

there, including evidence proving that the person requested is the person to whom the warrant of arrest refers; and
b) A summary statement of the facts of the case unless they appear from the warrant of arrest.

(citing *Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 471, 66 L.Ed. 956 (1922)). *See also, Theron v. United States Marshal,* 832 F.2d 492, 496 (9th Cir.1987).

▮▮▮ Emami is mistaken. Article 2(1) of the Treaty not only defines extraditable offenses under the Treaty, but also provides that in connection with these definitions,

> it shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offenses or denominate an offense by the same terminology.

This additional language places paragraphs (1)(a) and (1)(b) of article 2 in context. It is well established that all the principle of dual criminality requires is that the particular acts alleged constitute a crime in both jurisdictions. *See Caplan,* 649 F.2d at 1343; *Theron,* 832 F.2d at 496. The name by which the crime is described in the two countries need not be the same, nor need the scope of the liability for the crimes be either coextensive or the same in both countries. *Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922) (Indian crime of dishonestly inducing delivery of property through cheating equivalent to the crime of obtaining property by false pretenses that treaty listed as an extraditable offense); *Wright v. Henkel,* 190 U.S. 40, 58, 23 S.Ct. 781, 785, 47 L.Ed. 948 (1903).

We have no doubt that Emami's alleged conduct would be prosecutable "under the Federal laws of the United States."[4] As Emami argued before the district court, the crime paragraph 263 of the German Penal Code defines is comparable to the federal crime of mail fraud. 18 U.S.C. § 1341

(1984).[5] It does not matter that the German statute does not contain the jurisdictional element of a use of the mails. The substantive conduct each statute punishes is functionally identical. If Emami had instead been involved in a scheme to bill either the Medicare system or a private insurance company in this country for services not rendered or for artificially inflated costs, he could surely be indicted for mail fraud, given the impossibility of carrying out such a scheme without the use of the mails. *See, e.g., United States v. Lipkis,* 770 F.2d 1447 (9th Cir.1985) (Medicare fraud will support conviction for mail fraud); *United States v. Peters,* 732 F.2d 1004 (1st Cir.1984) (insurance fraud will sustain a conviction for mail fraud). Additionally, making false statements on a Medicare claim is a crime under the Social Security Act, 42 U.S.C. § 1395nn(a)(1) (1983). Since the alleged conduct is criminal in both the United States and in Germany, the principle of dual criminality is satisfied. The conduct constitutes an extraditable offense under the terms of the Treaty.

## III. THE COMPETENCY OF THE EVIDENCE BEFORE THE DISTRICT COURT

▮▮ Emami contends that Germany presented no competent evidence upon which the district court could make a finding of extraditability because the facts which prosecutor Keller related in his affidavit consisted solely of inadmissible hearsay statements made by Emami's former patients and employees.[6] This contention lacks merit because under the general ex-

---

**4.** From the language of article 2(1)(a) & (b), it can be argued that the acts Germany alleges must be criminal under the federal criminal law of the United States and that a law criminal only under the law of California would not constitute an extraditable offense. Because the alleged acts would constitute crimes under federal law, we need not reach this issue.

**5.** 18 U.S.C. § 1341 (1984) allows prosecution of anyone who "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises...." makes use of the mails to further the scheme or artifice.

**6.** In arguing against the admissibility of the hearsay statements in Keller's affidavit, Emami argued that the California law governing the admission of hearsay statements in preliminary hearings applied in this case. It is well established that state law does not control the reception of evidence at extradition hearings. *Escobedo v. United States,* 623 F.2d 1098, 1103 (5th Cir.), *cert. denied,* 449 U.S. 1036, 101 S. Ct. 612, 66 L.Ed.2d 497 (1980); *Collins v. Loisel,* 259 U.S. 309, 317, 42 S.Ct. 469, 472, 66 L.Ed. 956 (1922). As used in the Treaty, "State" obviously refers to the two nations involved and not their political subdivisions.

tradition law of the United States [7] and the provisions of the Treaty, the hearsay statements Keller summarized in his affidavit are competent evidence.

■ With regard to the admissibility of evidence, the general United State extradition law requires only that the evidence submitted be properly authenticated:

Depositions warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped

....

18 U.S.C. § 3190 (1985).

■ Emami has not challenged the authentication of Keller's affidavit,[8] and so barring any conflict with specific provisions of the Treaty, the hearsay statements Keller summarized in his affidavit are admissible.

Article 29 of the Treaty is the only provision of the document that specifically relates to the admissibility of evidence in extradition proceedings. As relevant to the Keller affidavit, article 29 provides that "[a] warrant of arrest and depositions or other evidence, given on oath or in a manner described in article 14(5) ... shall be admitted in evidence in the examination of the request for extradition when [properly authenticated]." In addition to proper authentication, article 29 requires nothing more than for Keller's affidavit to have been sworn. Since Keller's submission was under oath, it is admissible.

Although article 29 is the only provision of the Treaty that relates directly to the admissibility of evidence in this case, Emami has ignored this provision and has in-stead seized on article 14 to attack the summaries of hearsay statements within Keller's affidavit. Article 14(3)(a) of the Treaty requires a request for extradition to be accompanied by "such evidence as, according to the law of the Requested State, would justify his arrest and committal for trial if the offense had been committed there...." This language does not make the challenged hearsay inadmissible.

In the Ninth Circuit it has been repeatedly held that hearsay evidence that would be inadmissible for other purposes is admissible in extradition proceedings. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir.) *cert. denied*, —— U.S. ——, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986); *Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir.1984); *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730 (9th Cir.1975). *Zanazanian* is the case most relevant to Emami's challenge to Keller's affidavit.

In *Zanazanian* we held police reports which summarize the statements of witnesses are competent evidence in extradition proceedings even though the same reports would be inadmissible hearsay in other contexts. 729 F.2d at 627. *Zanazanian* involved the extradition treaty between the United States and Sweden which required the request for extradition to be supported by "such evidence of criminality as, according to the laws of the place where the person sought shall be found, would justify his commitment for trial if the offense had been there committed." *Id.* at 626 (citing U.S.–Sweden Treaty, *supra* note 2, art. III). This language is only insignificantly different from the portion of article 14 at issue in the instant case. Keller's sworn affidavit is at least as reliable as the unsworn statements of the police officers this court considered in *Zanazanian*. Nothing in this case militates towards a different result in the instant case.

Emami also argues that any hearsay statements must have been the equivalent

---

7. 18 U.S.C. §§ 3181–95 (1985 & Supp.1987).

8. Article 29(a) of the Treaty sets forth the authentication requirements. Documents emanating from Germany are authenticated if they "are signed by a [German] judge or competent offi-cer, are authenticated by the official seal of the Federal Minister of Justice and are certified by the competent diplomatic or consular officer of the United States in the Federal Republic of Germany ..."

of sworn statements in order to be admissible under article 14(5) of the Treaty. Article 14(5) of the Treaty provides:

> A witness' statement taken down in writing or other evidence, not under oath, shall be admitted in evidence as a statement made or evidence given under oath if it is certified that the person making the statement or giving the evidence was warned by a competent authority that any false, misleading or incomplete declaration would render him liable to punishment.

Emami argues that although Keller swore to the accuracy of his submission to the court, there is no evidence that the witnesses whose testimony he summarized in his affidavit were given the warnings described in article 14(5).

■ Emami misconstrues article 14(5). This provision does not require hearsay statements supporting an extradition request to have been made by the declarant under oath or after having received proper warnings. Instead, this provision serves only to broaden the standard of competence of evidence in extradition proceedings. In cases where American or German law requires a statement to be made under oath, a statement made after proper warnings would be admitted in evidence as a statement made under oath. Absent any specific language that either country required a witness' statement be made under oath, article 14(5) does not apply to the witnesses' statements Emami has challenged.

In comparison, in *Greci v. Birknes*, 527 F.2d 956 (1st Cir.1976), the First Circuit required evidence submitted in a proceeding under the extradition treaty between the United States and Italy to have been given under oath. The First Circuit only imposed this requirement because specific language in that particular treaty mandated that result. In sharp contrast to the language of article 14(5) on which Emami relies, the treaty involved in *Greci* requires that "[t]he warrant of arrest and deposition or other evidence, *given under oath,* ... shall be admitted in evidence in the examination of the request for extradition when

[properly authenticated]." *Id.* at 959 (emphasis supplied).

## IV. REMAINING CONTENTIONS

Emami has also advanced several other less worthy contentions. Emami contends he was entitled to present evidence explaining the charges against him, and that denial of his requests for discovery so that he could explain the records of his medical clinic was an abuse of discretion. An extradition proceeding is not a trial; the relevant determination is confined to whether a prima facie case of guilt exists that is sufficient to make it proper to hold the extraditee for trial. *Charlton v. Kelly*, 229 U.S. 447, 461, 33 S.Ct. 945, 949, 57 L.Ed. 1274 (1913). Whether the district court abused its discretion is the standard by which this court reviews the denial of a request for discovery in an extradition matter. *Quinn v. Robinson*, 783 F.2d 776, 817 n. 41 (9th Cir.) *cert. denied,* — U.S. —, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986) (citing *Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2nd Cir.) *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976)). In exercising this discretion, a judge should consider that "extradition proceedings are not to be converted into a dress rehearsal for a trial" and "whether the resolution of the contested issue would be appreciably advanced by the requested discovery." *Id.*

■ The magistrate did not abuse his discretion in denying Emami discovery. It was well within the magistrate's discretion to find that an attempt on Emami's part to use his records to explain that no fraudulent billings for medical services had occurred would only be appropriate at trial. Furthermore, entertaining such arguments would inevitably have involved the magistrate in questions of German law. As previously discussed, considerations of international comity and competence make it advisable to avoid such questions.

Emami also urges us to establish a humanitarian exception to extradition in this case. Our analysis of this request begins with the observation that "[a]n extraditing court will generally not inquire into the

procedures or treatment which await a surrendered fugitive in the requesting country." *Arnbjornsdottir–Mendler v. United States,* 721 F.2d 679 (9th Cir.1983). However, the Second Circuit has speculated that a case might occur in which the extraditee "would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of [the general principle upholding extradition.]" *Gallina v. Fraser,* 278 F.2d 77, 78 (2nd Cir.), *cert. denied,* 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960). In *Arnbjornsdottir–Mendler* we left open the possibility that the considerations expressed in the *Gallina* caveat might someday cause us to develop a humanitarian exception in a case where the facts warranted it. That is all that should be done in this case.

■ Emami speculates that Germany might detain him for investigation for up to four years before either trying or releasing him, and he claims the stress of incarceration and trial would expose him to a high risk of suffering a serious heart attack. In considering this issue, the district court appointed its own cardiologist to examine Emami. The district court also had the opinions of three other cardiologists before it. The court found that none of these cardiologists thought Emami's condition was as serious as Emami represented. Moreover, the court found that the German government had given every indication that it would be at least as solicitous of Emami's health as the United States had been while Emami was in federal custody. These findings of fact are not clearly erroneous. Further discussion of a humanitarian exception is not appropriate given the facts of this case.

Finally, Emami contends that the district court erred in concluding that it had no jurisdiction to condition his extradition on Germany not deporting Emami to Iran. Emami claims he might be summarily executed if deported to Iran because he is a relative of the former Shah. Both the Treaty and the statutes setting forth the general extradition law of the United States [9] are silent as to the possibility of the requesting state deporting the extraditee to a third country.

Emami contends that articles 22 and 23 of the Treaty when taken together address this issue even though neither provision mentions deportation. Article 22(1) incorporates the doctrine of specialty into the Treaty.[10] Specialty is a doctrine based on international comity that prevents the country requesting the extradition of a fugitive from prosecuting the fugitive for crimes other than those for which he was extradited unless the country from which the fugitive was extradited consents to the prosecution. *United States v. Najoun,* 785 F.2d 1420, 1422 (9th Cir.1986). Article 23(1) places similar conditions on the requesting country's ability to reextradite a fugitive to a third country.[11] These two provisions address two distinctly different issues and we see no reason either to read them together or to speculate about deportation which the Treaty does not mention.

The Sixth Circuit has clearly stated that "[a] decision to attach conditions to an order of extradition is within the discretion of the Secretary of State, not the courts." *Demjanjuk v. Petrovsky,* 776 F.2d 571, 584 (6th Cir.1985). In reaching this conclusion, the Sixth Circuit relied on *Escobedo v. United States,* 623 F.2d 1098 (5th Cir.), *cert. denied,* 449 U.S. 1036, 101 S.Ct. 612,

**9.** 18 U.S.C. §§ 3181–95 (1985 & Supp.1987).

**10.** Article 22 provides in pertinent part:
(1) A person who has been extradited under this Treaty shall not be proceeded against, sentenced or detained with a view to carrying out a sentence or detention order for any offense committed prior to his surrender other than that for which he was extradited, nor shall he be for any other reason restricted in his personal freedom, except in the following cases:

a) When the State which extradited him consents thereto.

**11.** Article 23 reads in pertinent part:
(1) Except as provided for in Article 22 (1)(b), the Requesting State shall not, without the consent of the Requested State, re-extradite to a third State a person extradited to the Requesting State and sought by the said third State in respect of an offense committed prior to his surrender.

66 L.Ed.2d 497 (1980). The *Escobedo* court concluded that in the final analysis 18 U.S.C. § 3186 (1985)[12] leaves the decision to extradite with the executive. *Id.* at 1105 & n. 20. The *Escobedo* court aptly quoted the Fourth Circuit:

> The need for flexibility in the exercise of Executive discretion is heightened in international extradition proceedings which necessarily implicate the foreign policy interests of the United States. Thus, while Congress has provided that extraditability shall be determined in the first instance by a judge or magistrate, 18 U.S.C. § 3184, the ultimate decision to extradite is 'ordinarily a matter within the exclusive purview of the Executive.'

*Id.* (quoting *Peroff v. Hylton,* 563 F.2d 1099, 1102 (4th Cir.1977)).

 Additionally, in *Najohn* we grounded our holding that a party to an extradition treaty could waive its rights under the specialty doctrine in part on our conclusion that an extradition treaty merely:

> binds two countries to surrender fugitives to one another under certain circumstances. It does not purport to limit the discretion of the two sovereigns to surrender fugitives for reasons of comity, prudence, or even as a whim.

*Najohn,* 785 F.2d at 1422. The same considerations, taken together with the considerations the Fifth Circuit expressed in *Escobedo,* lead us to conclude that in the interests of preserving the discretion of the executive branch in this sensitive area of foreign affairs, the State Department alone has the power to condition the extradition of Emami on an agreement with Germany not to deport Emami to Iran.

AFFIRMED.

---

**12.** 18 U.S.C. § 3186 (1985) states in pertinent part:

"The Secretary of State *may* order the person committed under sections 3184 or 3185 of this title to be delivered to any authorized agent of such foreign government, to be tried for the offense of which charged" (emphasis added).