81 F.3d 169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eric MARQUEZ, Petitioner-Appellant,
v.
James J. MOLINARI, Respondent-Appellee.
 No. 95-17056.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 15, 1996.
Decided April 3, 1996.
 
 Before: HUG, Chief Judge, SNEED and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Eric Marquez, a citizen of France, appeals the district court's denial of his petition for habeas corpus challenging the district court's order finding him extraditable to France. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.
 
 
 3
 * Background
 
 
 4
 On May 31, 1995, Marquez was arrested in San Jose, California pursuant to an international arrest warrant issued in France for Marquez's alleged involvement in cocaine smuggling. After a formal extradition request was made by France, the district court held an extradition hearing at which the following evidence was presented.
 
 
 5
 In 1994, Serge De Linares and Georges Bertoncini were arrested after unloading 100 kilograms of cocaine from a boat in La Foret Fouesnant, France. They were subsequently questioned regarding their past drug trafficking activities, and specifically on the voyage of the vessel "CHARLES G." in 1992.
 
 
 6
 De Linares stated that in April 1992, he rented a boat, the CHARLES G., in Martinique and sailed with Marquez to Venezuela and then to Europe. De Linares stated that he was paid 300,000 francs in cash, "probably to estimate my skill and the one of my team mate Marquez." This was at least 3 times the normal rate. De Linares stated that what he transported on board the CHARLES G. "must have been cocaine after thinking and being arrested." Bertoncini stated that he paid De Linares to skipper the CHARLES G. and tacitly admitted that he recruited Marquez. Marquez's passport confirms that he traveled to Martinique on April 25, 1992, and that he traveled to Venezuela. Bertoncini, however, denied that cocaine was smuggled on the CHARLES G., and instead claimed that the purpose of the voyage was to smuggle emeralds. French customs records reveal that on June 12, 1992, the CHARLES G. was located by Spanish Customs near Cadiz, Spain. Two days later, Spanish authorities identified De Linares and Marquez in Spain.
 
 
 7
 The Government also introduced a report by a French examining magistrate who indicated that testimony given by an associate of the notorious drug trafficker, Pablo Escobar, "settles this journey [, the voyage of the CHARLES G.,] among the five conducted on [Bertoncini's] account ... [which] carried regularly 250 to 300 Kg. of cocaine...." Other evidence also linked Marquez to drug trafficking during this time.[1]
 
 II
 Scope of Review
 
 8
 "No direct appeal is available from a district court's certification of extraditability because that decision is not a final order." Emami v. United States District Court, 834 F.2d 1444, 1447 (9th Cir.1987). Instead, review is available only by way of petition for habeas corpus. Id. The scope of our review is limited to " 'whether (1) the extradition judge had jurisdiction to conduct extradition proceedings; (2) the extradition court had jurisdiction over the fugitive; (3) the treaty of extradition was in full force and effect; (4) the crime fell within the terms of the treaty; and (5) there was competent legal evidence to support a finding of extraditability.' " Id. (quoting Hooker v. Klien, 573 F.2d 1360, 1368 (9th Cir.), cert. denied, 439 U.S. 932 (1978)).
 
 III
 Analysis
 
 9
 On appeal, Marquez contends that the district court erred by finding that there was sufficient competent legal evidence to support his extraditions. We disagree.
 
 
 10
 The extradition treaty between the United States and France permits the extradition of a person "upon [the showing of] such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime or offence had been there committed." Treaty of Extradition, Jan. 6, 1909, U.S.-Fr., art. I, 22 U.S.T. 561, as amended by, Supplementary Convention, Feb. 12, 1970, U.S.-Fr., U.S.T. 407.
 
 
 11
 We have interpreted this type of treaty provision to require a showing of "probable cause" to believe that the person sought to be extradited committed the charged offense. See Emami, 834 F.2d at 1447; Quinn v. Robinson, 783 F.2d 776, 783 (9th Cir.1986). In making this determination, however,
 
 
 12
 the country seeking extradition is not required to produce all its evidence at an extradition hearing and it is not our role to determine whether there is sufficient evidence to convict the accused. The [district court] does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense. And on review we can determine only whether, because of an absence of competent evidence, the [district court's] determination is wrong as a matter of law.
 
 
 13
 Quinn, 783 F.2d at 815 (citations omitted). Thus, the district court's probable cause finding "must be upheld if there is any competent evidence in the record to support it." Id. at 791.
 
 
 14
 Although not overwhelming, the evidence of Marquez's involvement in the alleged smuggling of cocaine on board the CHARLES G. in 1992, including the statements of his alleged coconspirators, De Linares and Bertoncini, is sufficient to support the district court's finding of probable cause. See Id.; Emami, 834 F.2d at 1447; see also Zanazanian v. United States, 729 F.2d 624, 626-27 (9th Cir.1984) (self-incriminating statements of co-conspirators sufficient to establish probable cause in an extradition hearing); Sakaguchi v. Kaulukukui, 520 F.2d 726, 730 (9th Cir.1975) (hearsay evidence competent to establish probable cause for purposes of extradition hearing). Accordingly, we affirm the district court's denial of Marquez's petition for writ of habeas corpus.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 For example, a report of an interview with a person named Freddy Weydt also indicates that Marquez was involved in "cocaine traffic between the Caribbean Sea and Europe in 1992." The value of this report is, however, diminished by its language which indicates only that Weydt "would have made revelations" regarding these activities