**Darren Irwin COHEN, Petitioner,**

v.

**M. BENOV, Respondent.**

**No. CV 04 7645PARC.**

United States District Court,
C.D. California.

April 25, 2005.

The petitioner Darren Cohen is appearing pro se.

The respondent is represented by Beong–Soo Kim, Assistant United States Attorney, Los Angeles.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Anderson, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that: (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## JUDGMENT

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,

IT IS ADJUDGED that the Petition for Writ of Habeas Corpus is denied and the action is dismissed with prejudice.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On January 9, 1998, an indictment was filed in the Ontario Court (General Division), Canada, charging petitioner Darren Irwin Cohen with fraud in excess of $5,000.00 in violation of Section 380(1)(a) of the Criminal Code of Canada, and on August 4, 1998, a warrant was issued for the arrest of petitioner on the charge; on August 4, 1998, an information was filed charging petitioner with breach of recognizance in violation of Section 145(3) of the Criminal Code of Canada, and on the same date, a warrant was issued for the arrest of petitioner on the charge; and on September 15, 1998, an information was filed charging petitioner with failure to attend a court hearing in violation of Section 145(2) of the Criminal Code of Canada, and on the same date, a warrant was issued for the arrest of petitioner on the charge. Answer, Exh. A, Affidavit of Detective Constable William Timothy Lappan of the Town of Bancroft, Ontario Province, Cana-

da ("Lappan Aff."), ¶¶ 11, 16, 20, and attachments at 81–100.[1]

On October 21, 2003, the Government of Canada submitted to the United States a formal request for petitioner's extradition to face prosecution on the criminal charges pending against him for fraud in excess of $5,000 in violation of Section 380(1)(a) of the Criminal Code of Canada, failure to attend a court hearing in violation of Section 145(2) of the Criminal Code of Canada, and breach of recognizance in violation of Section 145(3) of the Criminal Code of Canada. Answer, Exh. A at 6–8, 43–45. On or about October 30, 2003, the United States made a formal request to extradite petitioner to Canada.[2] Answer, Exh. A, Declaration of Thomas B. Heinemann ("Heinemann Decl.").

On August 25, 2004, Magistrate Judge Rosalyn M. Chapman held an extradition hearing, and found there is probable cause to believe petitioner committed the three charged offenses and should be extradited to Canada under the extradition treaty between the United States and Canada. On September 13, 2004, this Court certified to the Secretary of State its finding that petitioner is extraditable to Canada on the three offenses charged against him, and there is probable cause to believe petitioner committed the offenses, and on September 30, 2004, District Judge Percy Anderson declined to stay petitioner's extradition pending resolution of this habeas proceeding.

## II

On September 15, 2004, petitioner filed the pending habeas corpus petition under 28 U.S.C. § 2241 challenging his extradition to Canada. In his habeas petition, petitioner claims: (1) the [G]overnment of Canada "did not present ... all facts in support of probable cause"; and (2) he is "being sought for offenses for which the Applicable Treaty does not permit extradition." Petition at 3. On November 19, 2004, respondent filed an answer. On March 31, 2005, petitioner filed a reply, and on April 13, 2005, petitioner filed a supplement to the reply.[3]

## DISCUSSION

### III

Extradition is "the surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within the territorial jurisdiction of the other, which, being competent to try and to punish him, demands the surrender." *Terlinden v. Ames,* 184 U.S. 270, 289, 22 S.Ct. 484, 492, 46 L.Ed. 534 (1902). Extradition from the United States is governed by 18 U.S.C. § 3184, which "confers jurisdiction on 'any justice or judge of the United States' or any authorized magistrate to conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation." *Cornejo–Barreto v. Seifert,* 218 F.3d 1004, 1009 (9th Cir. 2000). Specifically, Section 3184 provides:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, ... any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United

---

1. The details of petitioner's charged offenses are set forth in the Lappan affidavit and attachments.

2. This Court takes judicial notice, pursuant to Fed.R.Evid. 201, of all documents in *In re Darren Irwin Cohen,* case no. CV04–1055–PA(RC).

3. In his reply, petitioner now states he "does not dispute the validity of the[ ] [failure to attend court and breach of recognizance] charges." Reply at 5:15–19.

States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention ..., issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered.... If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention ..., he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184.

■ "The extradition process is ordinarily initiated by a formal request from a foreign government to the Department of State, which along with the Department of Justice, evaluates whether the request is within the scope of the relevant extradition treaty between the United States and the requesting nation." *Barapind v. Reno,* 225 F.3d 1100, 1105 (9th Cir.2000); *Cornejo–Barreto,* 218 F.3d at 1009. "Once approved, the United States Attorney for the judicial district where the person sought is located files a complaint in federal district court · seeking an arrest warrant for the person sought." *Barapind,* 225 F.3d at 1105; *Cornejo–Barreto,* 218 F.3d at 1009. A hearing is then held before a federal judge to determine whether the offense is extraditable and probable cause exists to sustain the charge(s). *Ibid.*[4] If these requirements are met, the judicial officer must certify to the Secretary of State that the individual is extraditable. 18 U.S.C. § 3184; *Zanazanian v. United States,* 729 F.2d 624, 626 (9th Cir.1984).

■ "[E]vidence sufficient to sustain the charge" requires that "[t]he requesting nation must demonstrate that there is probable cause that the fugitive committed the charged offense." *Cornejo–Barreto,* 218 F.3d at 1009; *Quinn v. Robinson,* 783 F.2d 776, 783 (9th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986). The requirement of "competent evidence that would be sufficient to establish probable cause to hold a defendant for trial under United States law[,]" *Emami v. United States Dist. Court for the N. Dist. of Cal.,* 834 F.2d 1444, 1447 (9th Cir.1987), is reflected in Articles 9[5] and 10[6] of the

---

4. To be extraditable, the offense must be within the scope of the treaty, an offense in both the requesting state and the United States, and an offense not subject to the political offense exception. *Cornejo–Barreto,* 218 F.3d at 1009 n. 4.

5. Article 9 provides, in pertinent part:
 When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested

State, would justify his arrest and committal for trial if the offense had been committed there....
 Heinemann Decl., ¶ 3, attachments at 17.

6. Article 10 provides, in pertinent part:
 Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person

extradition treaty between the United States and Canada. Nevertheless, "the country seeking extradition is not required to produce all its evidence at an extradition hearing and it is not [this Court's] role to determine whether there is sufficient evidence to convict the accused." *Quinn,* 783 F.2d at 815. Rather, probable cause exists "if there is any competent evidence in the record to support it." *Then v. Melendez,* 92 F.3d 851, 854 (9th Cir.1996); *Quinn,* 783 F.2d at 791. Competent evidence includes hearsay evidence, "and the usual rules of evidence are not applicable in this context." *Then,* 92 F.3d at 855 (citations omitted); *Quinn,* 783 F.2d at 815–16; *see also Barapind v. Enomoto,* 400 F.3d 744, 748 (9th Cir.2005) (en banc) (per curiam) (" 'With regard to the admissibility of evidence, the general United States extradition law requires only that the evidence submitted be properly authenticated.' " (quoting *Emami,* 834 F.2d at 1451)).

■ "Decisions of an extradition court are not directly reviewable but may be challenged collaterally by a petition for habeas corpus." *Barapind,* 400 F.3d at 748 n. 5; *Oen Yin–Choy v. Robinson,* 858 F.2d 1400, 1402 (9th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989). "The scope of habeas review of an extradition order is severely limited." *Artukovic v. Rison,* 784 F.2d 1354, 1355–56 (9th Cir.1986). More specifically, the court may only consider whether: the extradition judge had jurisdiction to conduct the proceeding and over the individual sought; the extradition treaty was in force; the crime fell within the treaty's terms; there is probable cause the individual sought committed the crime; and the crime comes within the political offense exception. *Cornejo–Barreto,* 218 F.3d at 1009–10; *In re Extradition of Coe,*

convicted by the courts of the requesting State.

261 F.Supp.2d 1203, 1205–06 (C.D.Cal. 2003).

## IV

The extradition treaty between the United States and Canada provides, in relevant part:

(1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

Heinemann Decl., ¶ 3, attachments at 9–42.

The charges pending against petitioner in Canada are set forth in Sections 380 and 145 of the Criminal Code of Canada. Specifically, Section 380(1)(a) prohibits fraud over $5,000.00, as follows:

(1) Every one who, by deceit, falsehood or other fraudulent means, whether or not it is a false pretence within the meaning of this Act, defrauds the public or any person, whether ascertained or not, of any property, money or valuable security or any service,

(a) is guilty of an indictable offence and liable to a term of imprisonment not exceeding ten years. . . .

Affidavit of Nadia Elizabeth Thomas ("Thomas Aff."), ¶¶ 15–16. The affidavit of Detective Constable Lappan sets forth evidence showing that petitioner, between May 1992 and July 1996, defrauded Barbara Lubov Henderson, a Canadian resident, of approximately $3.2 million Canadian dollars. Lappan Aff., ¶¶ 2, 7–11, attachments at 67–77. Specifically, Detective Constable Lappan states:

8. . . . In July 1994, . . ., Darren COHEN contacted Ms. HENDERSON by telephone and engaged her in what would later be found to be a fraudulent

Heinemann Decl., ¶ 3, attachments at 18.

scheme. COHEN told Ms. HENDERSON that, as a result of her years as a customer to telemarketing agencies, her name had been entered into a cash promotion in the United States, and that she was the grand prize winner of several million dollars in United States funds. COHEN explained to the victim that, unlike Canada where a prize money is not taxable, prize winnings in the United States were taxable and that those taxes had to be paid prior to the release of any awards. Darren COHEN then fraudulently represented himself as an agent for a company in the United States who would, for a percentage, act on the victim's behalf, as an intermediary to facilitate the victim claiming her prize money while paying the least amount of taxes possible. COHEN asked the victim to provide him with various sums of money, in order to facilitate collection of her winnings. The victim agreed to do so, and she forwarded her money to COHEN after liquidating her stock portfolio in Scotland. All funds passed through the victim's financial accounts in Canada before being wired to the accused's personal accounts, which were located both in Canada and in the United States. The police investigation into this matter later revealed there were no "prize winnings," and that COHEN was not acting for the victim in any legitimate capacity. [¶] 9. Ms. HENDERSON was also the unfortunate victim of a home invasion robbery in 1996. She discussed this traumatic event with [COHEN], who suggested that she travel to his home in California for some relaxation. The victim agreed to travel from Canada to COHEN's home, and she stayed with him at 14131 Beresford Road, Beverly Hill[s], California between 10 June 1996 and 23 June 1996, before returning to Canada. During that time, COHEN had daily personal contact with the victim, and he continued to ply her for money. [¶] 10. The total amount received by [COHEN] from the victim during the period May 1992 to July 1996, was approximately $3,253,329.50 in Canadian dollars.

Section 145(2) and (3) of the Criminal Code of Canada provides, as follows:

(2) Every one who,

a) being at large on his undertaking or recognizance given to or entered into before a justice or judge, fails, without lawful excuse, the proof of which lies on him, to attend court in accordance with the undertaking or recognizance, or

b) having appeared before a court, justice or judge, fails, without lawful excuse the proof of which lies on him, to attend court as thereafter required by the court, justice or judge, or to surrender himself in accordance with an order of the court, justice or judge, as the case may be, is guilty of an indictable offence and liable to imprisonment for a term not exceeding two years or is guilty of an offence punishable on summary conviction[.]

(3) Every person who is at large on an undertaking or recognizance given to or entered into before a justice or judge and is bound to comply with a condition of that undertaking or recognizance directed by a justice or judge, ..., and who fails, without lawful excuse, the proof of which lies on that person, to comply with that condition or direction, is guilty of

a) an indictable offence and is liable to imprisonment for a term not exceeding two years; or

b) an offence punishable on summary conviction.

Thomas Aff., ¶ 17.

The affidavit of Detective Constable Lappan also establishes that on October

17, 1996, petitioner was arrested on the charge of violating Section 380(1)(a), fraud in excess of $5,000.00, and, following a hearing, petitioner was released from custody on certain terms and conditions. Lappan Aff., ¶¶ 11–12. Petitioner's conditions of release were subsequently amended to permit him to return to California to conduct his business, provided, among other things: he reside at 14131 Beresford Road, Beverly Hills, California; he immediately notify Detective Constable Lappan of any change of his California address; and he provide Detective Constable Lappan with a written itinerary in advance of leaving California. Id., ¶ 13. Petitioner was required to appear in Ontario Superior Court on July 10, 1998, to plead guilty to the charge of fraud in excess of $5,000.00, Section 380(1)(a), but he failed to appear and a new court date of August 4, 1998, was set. Id., ¶ 14. Petitioner again failed to appear in Ontario Superior Court on August 4, 1998. Id., ¶ 16. When Detective Constable Lappan made inquiries regarding petitioner's residence, he discovered petitioner was no longer living at 14131 Beresford Road, Beverly Hills; rather, he had sold his cars for cash and had left California without leaving a forwarding address and without providing Detective Constable Lappan with a written itinerary of his whereabouts, both of which were required by the terms of his release. Id., ¶¶ 15–17.

Petitioner claims in Grounds One there is no probable cause to support his extradition. There is no merit to this claim. As an initial matter, petitioner does not dispute he is the same Darren Irwin Cohen against whom such charges are now pending. See also Lappan Aff., ¶ 4, attachment at 79–80. Moreover, based on the evidence from Detective Constable Lappan detailed above, there is more than sufficient evidence to establish probable cause that petitioner committed each of the offenses charged against him. Nevertheless, in his reply and supplemental reply, petitioner has submitted evidence he claims establishes that the monies he received from Ms. Henderson were gifts, rather than proceeds fraudulently obtained. See Reply at 5:13–14, 6:7–7:23, Exh. B at 14, Exhs. C, J–L; Supplemental Reply at 1:17–3:22, Exh. F. Although "a fugitive facing extradition can present his own evidence to explain away the requesting government's evidence of probable cause[,]" Barapind, 400 F.3d at 749; Mainero v. Gregg, 164 F.3d 1199, 1207 n. 7 (9th Cir.1999), the evidence petitioner has presented does not do that. Rather, it is merely petitioner's "conflicting evidence, the credibility of which could not be assessed without a trial." Barapind, 400 F.3d at 750; see also Emami, 834 F.2d at 1452 ("An extradition proceeding is not a trial; the relevant determination is confined to whether a prima facie case of guilt exists that is sufficient to make it proper to hold the extraditee for trial."). Thus, since this Court "does not weigh conflicting evidence and make factual determinations" in assessing probable cause, petitioner's "gift" evidence provides no basis for rejecting the Government's evidence establishing probable cause petitioner committed fraud. Barapind, 400 F.3d at 750; see also Emami, 834 F.2d at 1452 (Emami's "attempt … to use his records to explain that no fraudulent billings for medical services had occurred would only be appropriate at trial."). Similarly, petitioner's claim that Ms. Henderson is now dead, and would not be available as a witness at his trial, is a matter for the Canadian courts to address, and it does not negate the probable cause determination. Mainero, 164 F.3d at 1207.[7]

---

7. It should be noted that before petitioner fled, Ms. Henderson testified under oath at petitioner's preliminary inquiry. Supplemental Reply, Exh. F.

 Further, each of the charged offenses is comparable to a federal charge in the United States, and each is punishable in both Canada and the United States by imprisonment of more than one year, as required by the extradition treaty between the United States and Canada. First, the offense of fraud in excess of $5,000.00, Section 380(1)(a), is comparable to the federal offenses of fraud and mail fraud set forth in 18 U.S.C. §§ 1341, 1343, and both the Canadian and American offenses are punishable by imprisonment for more than one year. Petitioner does not dispute this. Second, petitioner also does not dispute that the offense of failure to attend a court hearing, Section 145(2), is comparable to the federal offense of failure to appear set forth in 18 U.S.C. § 3146, which also is punishable in both Canada and the United States by imprisonment for more than one year.

 However, in Ground Two, petitioner claims there is no federal counterpart to the Canadian offense of breach of recognizance under Section 145(3) of the Criminal Code of Canada, and the offense is not punishable by more than one year imprisonment; thus, petitioner claims he cannot be extradited to face charges on that offense.[8] Petitioner is mistaken. An examination of the United States Code shows that a criminal defendant who violates or breaches a condition of pretrial release, such as petitioner did, may be charged with violating 18 U.S.C. § 3148, which provides:

(a) **Available sanctions.**—A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.

\* \* \* \* \* \*

(c) **Prosecution for contempt.**—The judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release.

18 U.S.C. § 3148. In turn, Section 401 provides for criminal contempt, as follows:

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as -

\* \* \* \* \* \*

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. Although Section 401 does not provide a specific penalty for its violation, "sentences for contumacious conduct can be quite severe. Under federal law, there is no statutory limit to the sentence that can be imposed in a jury-tried criminal contempt proceeding." *United States v. Dixon*, 509 U.S. 688, 724 n. 2, 113 S.Ct. 2849, 2871 n. 2, 125 L.Ed.2d 556 (1993) (Justice White, concurring, in part, and dissenting, in part); *see also Green v. United States*, 356 U.S. 165, 187–89, 78 S.Ct. 632, 645–46 2 L.Ed.2d 672 (1958) (affirming three-year criminal contempt sentence under Section 401 for failing to appear in court after being released on bail), *overruled in part on other grounds*, *Bloom v. State of Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *United States v. Carpenter*, 91 F.3d 1282, 1283 (9th Cir.1996) ("The criminal contempt statute, 18 U.S.C. § 401(3), grants broad discretion in determining a sentence; it specifies neither minimum nor maximum penalty." (footnote omitted)) (per curiam); *United States v. Gabay*, 923 F.2d 1536, 1538–39 n. 1, 1545 (11th Cir.1991) (affirm-

---

8. Respondent aptly notes, of course, that this claim would **not** prevent petitioner's extradi- tion since he would, nevertheless, be extradited on the other charges against him.

ing 60–month sentence for criminal contempt in violation of Section 401 for defendant who fled shortly before his criminal trial).

 Finally, in his reply and supplemental reply, petitioner concocts an elaborate scenario under which his and his mother's lives would be placed in grave danger if he is extradited to Canada because he previously acted as "an undercover operative," assisting the Ontario Provincial Police ("O.P.P.") and Royal Canadian Mounted Police in exposing fraud in the Canadian telemarketing industry and in uncovering "deep rooted corruption among O.P.P. rank and file."[9] Reply at 1:2:18, 5:21–27, 7:26–8:25, 10:2–21, Exhs. A, G, M; Supplemental Reply at 4:22–28. Of course, new claims for relief cannot be raised in a reply brief. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994), *cert. denied*, 514 U.S. 1026, 115 S.Ct. 1378, 131 L.Ed.2d 232 (1995). Nevertheless, even if this claim were properly raised, under the rule of non-inquiry, "an extraditing court will not inquire into the procedures or treatment awaiting a surrendered fugitive in the requesting country." *Lo-*

*pez–Smith v. Hood*, 121 F.3d 1322, 1326–27 (9th Cir.1997); *Mainero*, 164 F.3d at 1205 n. 6; *see also Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir.2003) ("[T]he rule of non-inquiry limits the judicial role, although 'it is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed.'" (citation omitted)). Moreover, petitioner has presented absolutely no reliable evidence that "corrupt" O.P.P. officers would harm him if he returns to Canada.[10] *Extradition of Manzi*, 888 F.2d 204, 206 (1st Cir. 1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990). Similarly, petitioner has presented absolutely no reliable evidence that various "criminals" in Canada would harm him if he returns to Canada.[11] *Mainero*, 164 F.3d at 1210; *see also Sindona v. Grant*, 619 F.2d 167, 174–75 (2d Cir.1980) (refusing to bar petitioner's extradition to Italy despite claim "return to Italy would subject [petitioner] to

9. Indeed, petitioner further states that, with Ms. Henderson's money and blessing, he funded operation "Phone Busters," and for that work, he "received awards and medals" due to his "single-handed efforts that produced and resulted in the indictments and arrests and thus the shutting down of ... fraudulent companies...." Supplemental Reply at 4:6–22.

10. Petitioner cites two newspaper reports in which O.P.P. officers were charged with various crimes, Reply, Exh. M; however, petitioner does not relate these charges to any incidents involving himself. Similarly, petitioner provides the declaration of his friend, Howard Denbow, who relates that *petitioner* "intimated" to him that certain individuals want to kill him and have threatened petitioner's mother, and these individuals have "a strong network of Police affiliations." Reply, Exh. A. However, Denbow's statement is hearsay, and reflects solely what petitioner told him!

Finally, petitioner's mother, Sandra Bernard, states that certain criminal organizations "have large numbers of high-ranking O.P.P. officers on their 'payroll.'" Reply, Exh. G. However, Mrs. Bernard sets forth no personal knowledge or basis for this statement.

11. Petitioner relies exclusively on Mr. Denbow's and his mother's declarations. Mr. Denbow vaguely reports threats to petitioner "from people I knew living in Montreal as well as from Darren and his mother." Reply, Exh. A. Petitioner's mother states that in April 1998, she was confronted by the wife of an individual who was under investigation by the "Phone Busters" task force, and who "made it very clear that it would be in [petitioner's] and [his mother's] best interest, to put it mildly, for [petitioner] not to set foot in Canada again." Reply, Exh. G. Despite this threat, however, petitioner's mother has apparently continued to reside in Canada for the past seven years.

risk of murder or injury at the hands of his political enemies"); *Peroff v. Hylton,* 542 F.2d 1247, 1249 (4th Cir.1976) ("If there are potential assassins in Swedish prisons, it is for Sweden to take measures adequate to secure [extraditee's] safety and protection.... There is no basis for suspecting Sweden's criminal processes, or supposing that Sweden cannot or will not adequately provide for [extraditee's] protection from criminal elements who may have grievances against him."), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977).

Thus, for the foregoing reasons, petitioner should be extradited to Canada to face charges for violating Sections 380(1)(a) and 145(2) and (3) of the Criminal Code of Canada, and petitioner's habeas corpus petition should be denied.

### RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) entering Judgment denying the petition and dismissing the action with prejudice.